## PEOPLE *v.* CHAMBERS.

1. INDICTMENT AND INFORMATION—DUPLICITY—CONSPIRACY—MUL-
TIPLICITY OF OBJECTS.

   Information charging conspiracy not only to steal property but
   also to receive and traffic in stolen property, knowing it had
   been stolen, *held,* not bad for duplicity as there was but one
   conspiracy with a multiplicity of criminal activities as ob-
   jects.

2. CONSPIRACY—CRIME AS ITS OBJECT DIFFERENT CRIME THAN CON-
SPIRACY.

   A conspiracy to commit a crime is a separate and distinct of-
   fense from the crime which it is the object of the conspiracy
   to commit.

3. INDICTMENT AND INFORMATION—CONSPIRACY—VIOLATION OF LAW
—STATUTES—COMMON LAW.

   Information charging conspiracy to steal and to receive and
   traffic in stolen property, knowing it to have been stolen, *held,*
   good under statute providing that any person who should
   commit an offense indictable at common law for the punish-
   ment of which no provision is expressly made by any statute
   of the State should be guilty of felony, since the information
   charged a conspiracy to violate the law, an indictable offense
   at common law (Act No. 328, § 505, Pub. Acts 1931).

4. CRIMINAL LAW—CONSPIRACY—EVIDENCE—INFORMATION.

   On trial of defendants charged with conspiracy to steal and to
   receive and traffic in stolen property, knowing it to have been
   stolen, all of the acts and facts upon which any reasonable
   presumption of the truth or falsity of the charge made against
   the defendants in the information could be founded were ad-
   missible (Act No. 328, § 505, Pub. Acts 1931).

5. EVIDENCE—HEARSAY—CROSS-EXAMINATION.

   Hearsay testimony is not admissible under any circumstances be-
   cause the essential right of cross-examination is absent.

6. CRIMINAL LAW—STATEMENTS OF CO-CONSPIRATORS—HEARSAY.

When there is conspiracy, when persons are engaged in common enterprise, and there is mutual agency, evidence of statements of one conspirator may be introduced against other conspirators, but without existence of conspiracy, existence of mutual agency, testimony otherwise hearsay is not admissible.

7. SAME — EVIDENCE — ADMISSIBILITY OF STATEMENTS OF CO-CONSPIRATORS BEFORE AND AFTER CONSPIRACY.

What was said or done by one of alleged conspirators before conspiracy was formed or after its object was attained and its work fully completed, not in presence or hearing of others and not brought to their knowledge and ratified by them, is not admissible against them, because basic element of joint agency does not exist.

8. SAME—CONSPIRACY—RES GESTÆ.

Res gestæ in conspiracy cases is limited to period during which parties are engaged in unlawful enterprise.

9. CONSPIRACY—EVIDENCE.

Where a conspiracy exists, what was said or done by any of the members of the conspiracy in furtherance of such conspiracy is admissible against co-conspirators.

10. SAME—EVIDENCE—PRESENCE OR KNOWLEDGE OF CO-CONSPIRATORS.

In prosecution for conspiracy to steal and to receive and traffic in stolen property, knowing it to have been stolen, whatever may have been said or done by any of the parties in pursuance of the conspiracy entered into or existing between them to steal or deal in stolen property held, admissible in evidence even though all of the parties may not have been present or may not have known about what was said.

11. TRIAL—PRESENCE IN JURY ROOM OF OFFICER IN CHARGE OF JURY—COMMUNICATION TO DETECTIVE.

Presence in jury room of officer in charge of jury five times before jury reached verdict, for alleged purposes of taking water and tobacco to jurors at their request, closing of jury room door while he was in there and at least in one instance communicating with a detective that jury had not reached a verdict held, ground for reversal in prosecution for conspiracy, since it is not what the officer may have said or done any more than his mere presence with the jury that is or may be prejudicial to defendants and tend to cast suspicion upon the orderly administration of justice.

· ·Appeal from Oceana; Pugsley (Earl C.), J. Sub-mitted January 14, 1937. (Docket·No. 120, Calendar No. 38,695.) Decided March 1, 1937.

Leslie Chambers and Simon Slosberg were con-victed of conspiracy in stealing and receiving and disposing of stolen goods. Reversed with new trial.

· Clifford A. Bishop, Howard Cline and F. E. Wet-more, for defendants.

Raymond W. Starr, Attorney General, Joseph R. Joseph, Prosecuting Attorney,. and Stephen J. Roth, Assistant Prosecuting Attorney, for the People.

Potter, J. Defendants were arrested, informed against and charged with conspiracy. Subsequent to their initial arraignment an amended information was filed against them, a copy of which is in the note annexed hereto.* Upon trial, defendants were

---

* Amended Information.

(Filed April 23, 1935.)

(Title of Court and Cause.)

Andrew J. Transue, prosecuting attorney for said county, for and in behalf of the people of the State of Michigan, comes into said court, in the February, A. D. 1935 term thereof, and gives it here to understand and be informed that Simon Slosberg and Leslie Chambers heretofore, to-wit: On or about the 1st day of April in the year 1933 at the city of Flint in said Genesee county, and between that date and the 18th day of November, A. D. 1934, did unlawfully and wickedly agree, connive, conspire, confederate and engage to, with and among themselves, and to and with Carl P. Latting, Ellsworth Martin, Roy Long, Clarence Nelson, and to and with divers other persons unknown, to steal tin, babbitt, bearings and other property of more than the value of 50 dollars lawful money of the United States from the Buick Motor Company, a factory, and to receive, purchase, buy, conceal, sell, dispose of and deal in tin, babbitt, bear-ings and other property of more than the value of 50 dollars lawful money of the United States, stolen from the Buick Motor Company, a factory, knowing at the time of receiving, purchasing, buying, concealing, selling,. disposing of and dealing in said tin, babbitt, bearings, and other property and at the time of said conspiracy that said tin, babbitt, bearings and other property of more than the value

convicted by jury. Subsequently a motion was made to set aside the verdict and to grant a new trial, which motions were overruled and defendants bring the case here by appeal in the nature of a writ of error.

Defendants insist: (1) the original information and the amended information upon which they were convicted were bad for duplicity; (2) the information did not charge any offense known to the law; (3) the court should have required the people to separate the various counts of the information; (4) there was error in the admission of testimony; (5) the court should have directed a verdict of not guilty in favor of the defendant Slosberg; (6) there was error in the charge of the court; (7) defendants are entitled to a new trial by reason of misconduct of the officer in charge of the jury.

An examination of the information filed in this case indicates it charges conspiracy upon the part of the defendants not only to steal property belong-

---

of 50 dollars lawful money of the United States were stolen, all contrary to the law and the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

Andrew J. Transue,
Prosecuting Attorney for
the County of Genesee.

The witnesses known to me at the time of filing the foregoing information are, viz: Edwin D. Mallory, Gerald Ruddy, Ellsworth Martin, Carl Latting, Roy Long, Clarence Nelson, W. Stonebraker, Don McDonald, Edward Tewhey, Harry Demorest, Arthur Scanlon, Vern Snell, Don Martin, L. M. Walsh, Fay Murphy, John McNamee, Wm. Morgan, Vane Pillon, Barney Zielinski, Lynn P. Smith, Jack McDonald, Oscar Erlandson, Leona Shively.

Names indorsed—Hattie Latting, Ronald Martin, Ive Martin, Robert Martin.

Andrew J. Transue,
Prosecuting Attorney for
the County of Genesee.

ing to the General Motors Corporation, but also to receive and traffic in property stolen from the General Motors Corporation, knowing it had been stolen.

It is argued that inasmuch as the stealing of property is inconsistent with the receiving of the same property, knowing it to have been stolen, the information is bad in that it charges commission of two offenses. The crime of conspiracy with which the defendants are charged does not, however, depend upon the things done in pursuance of the conspiracy, upon the success or failure of the conspiracy entered into between the parties. There was one conspiracy, no matter if it did have a multiplicity of objects. This conspiracy was to do unlawful and illegal acts. We think the information filed against defendants was not bad for duplicity. *People* v. *Tenerowicz,* 266 Mich. 276; *Heike* v. *United States,* 227 U. S. 131 (33 Sup. Ct. 226, Ann. Cas. 1914C, 128); *United States* v. *Rabinowich,* 238 U. S. 78 (35 Sup. Ct. 682); *People* v. *Tavormina,* 257 N. Y. 84 (177 N. E. 317, 75 A. L. R. 1405). Under all the authorities, a conspiracy to commit a crime is a separate and distinct offense from the crime which it is the object of the conspiracy to commit. 12 C. J. p. 542. So the conspiracy, if entered into, is not dependent upon whether the conspiracy contemplated the stealing of property from the General Motors Corporation or the dealing with property stolen from the General Motors Corporation, knowing it to have been stolen. The information charges the conspiracy contemplated both these things, and the multiplicity of criminal activities contemplated by a conspiracy was certainly no defense to an indictment charging the conspiracy itself. We think the information was not void for duplicity.

It is contended the information does not charge any offense known to the law. The statute, Act No. 328, § 505, Pub. Acts 1931, provides:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be guilty of a felony, punishable by imprisonment in the State prison not more than five years or by a fine of not more than two thousand five hundred dollars."

We think the information charges a conspiracy to violate the law, and that such conspiracy was an indictable offense at common law and is, therefore, good under this statute.

All of the acts and facts upon which any reasonable presumption of the truth or falsity of the charge made against the defendants in the information could be founded were admissible. Hearsay testimony is not admissible under any circumstances because the essential right of cross-examination is absent. But where a conspiracy is charged, where persons are engaged in a common enterprise, when there is mutual agency, evidence of the statements of one conspirator may be introduced against the other conspirators, though without the existence of such a conspiracy, the existence of such mutual agency, the testimony would be hearsay and not admissible. And in all cases of conspiracy, what is said or done by one of the alleged conspirators, before the conspiracy was formed or after its object was attained and its work fully completed, not in the presence or hearing of the others, and not brought to their knowledge or ratified by them, is not admissible against them for the reason the basic element of joint agency does not exist. They are state-

ments made before the conception or after the completion of the offense to which the defendant is not a party, and by which he may not be bound. *People* v. *Lewis,* 264 Mich. 83. But the *res gestæ* of a conspiracy is limited only by the period during which the parties are engaged in an unlawful enterprise. *People* v. *Lewis, supra.* And where a conspiracy exists, what was said or done by any of the members of the conspiracy in furtherance of such conspiracy is admissible. In this case, whatever may have been said or done by any of the parties in pursuance of the conspiracy entered into or existing between them to steal or deal in property stolen from the General Motors Corporation was admissible in evidence, even though all of the parties may not have been present or may not have known about what was said. We can add nothing to what was said about the admissibility of testimony in cases of conspiracy in *People* v. *Lewis,* cited above. We do not find reversible error in the admissibility of proof.

After this case was argued and during the time the jury was deliberating, an officer of the court was repeatedly in the jury room, and upon returning from the jury room reported to others the state of their deliberations. Affidavits made by defendants Chambers and Slosberg and others were made the basis of a motion to set aside the verdict. This motion came on before the trial court. These affidavits were presented, whereupon the officer charged with misconduct was brought before the court. He testified that he was the court officer upon the trial of this case in Oceana county, that he had charge of the jury as a court officer. He denied he had been in the jury room and stayed there 15 or 20 minutes as charged in the affidavits, denied he had communicated to any

person the state of the jury's deliberations, and claimed he did not communicate with any person in relation to the case. Upon cross-examination, he testified he was called in to the jury only once and stayed there a little time, not over three minutes. He later admitted he was in the jury room four different times, and closed the door after him, for the purpose of taking water in to the jurors. Finally, he admitted he was in the jury room five times, four times to furnish water and once to take some tobacco to one of the jurors; that at one time Detective Martin asked him if the jury had come to any decision and he told him no, and "That is all there was to the conversations." After the taking of this testimony, the trial court refused to set aside the verdict or to grant a new trial.

It may be the acts or conduct of the officer had nothing to do with the deliberations of the jury or the conclusions which they arrived at. He had no business in the jury room. If it was necessary to furnish water to the jurors, it could have been furnished and he could have remained outside. At least five times he was in the jury room for the purpose of taking in water or furnishing tobacco to the jurors at their request, and the jury room door was closed. On at least one occasion, when he came out of the jury room he was accosted by Detective Martin who asked him if the jury had agreed upon a verdict and he communicated to the detective that they had not. It is important that the officer be not guilty of any misconduct that could have influenced the jury, and that his conduct not furnish any ground for suspicion the jury was being tampered with or might be tampered with or was deliberating in his presence. It is not what the officer may have said or done any more than his mere presence with the jury that is or

may be prejudicial to defendants and tend to cast suspicion upon the otherwise orderly administration of justice. *People* v. *Knapp,* 42 Mich. 267 (36 Am. Rep. 438); *Churchill* v. *Alpena Circuit Judge,* 56 Mich. 536.

For this error, we are constrained to reverse the conviction and grant a new trial.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.