PEOPLE v. MULLANE.

1. CRIMINAL LAW—SEPARATE TRIAL—DISCRETION OF COURT.
  Question of separate trials, where there is more than one de-
    fendant, rests in discretion of court (3 Comp. Laws 1929,
    § 17298).

2. SAME—ABUSE OF DISCRETION.
  Where motion for separate trial was not supported by affidavit
    stating facts from which court might determine whether de-
    fenses relied on were inconsistent and joint trial might result
    in prejudice, its denial was not abuse of discretion.

3. JURY—RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW.
  Persons accused of crime have right to trial by impartial jury
    (Const. art. 2, § 19) and to exercise challenges, either for
    cause or peremptory, at any time before jury is sworn.

4. SAME—EXCUSING DISQUALIFIED JURORS AFTER ACCEPTANCE—PER-
  EMPTORY CHALLENGES.
  Where, after jury had been finally accepted, court excused two
    jurors for disqualification and called two who were qualified,
    accused, who had right to inquire of them as to their qualifica-
    tion, was not deprived of any right although his peremptory
    challenges were exhausted.

5. CRIMINAL LAW—TRIAL—INSTRUCTIONS—REMARKS OF PROSECUTOR.
  Omission of court to instruct jury to disregard statement of
    prosecuting attorney that defense attorney had asked question
    solely to prejudice witness in eyes of jury, held, not reversible
    error.

.6. SAME—INSTRUCTIONS AS TO ALIBI.
  Charge of court that alibi is easy to prove and very hard to
    disprove, held, not reversible error, in view of charge as whole
    relating to said subject.

7. SAME—REMARKS OF PROSECUTOR AND COURT.
  Where, in ruling against admission of statement of one
    defendant as not binding on others, prosecuting attorney
    said "The declaration of a co-conspirator, your honor," and
    court responded "That is true," incident held, not prejudicial
    to defendants; no objection having been taken thereto.

8. SAME—REQUESTS TO CHARGE.

Where rights of accused were fully protected and requests to charge, so far as applicable to facts, were covered in charge as given, there was no error in refusing said requests.

9. SAME—RIGHT TO NEW TRIAL—DISCRETION OF COURT.

Right to new trial is conferred by statute and motion therefor is appeal to sound discretion of court (3 Comp. Laws 1929, § 17355).

10. SAME—BASIS OF MOTION FOR NEW TRIAL.

In criminal case, motion for new trial is based on claim that defendant has not had that fair and impartial trial guaranteed to him by Constitution, or that verdict is against great weight of evidence.

11. SAME—DENIAL OF NEW TRIAL NOT ABUSE OF DISCRETION.

Where evidence in criminal case strongly supports verdict, there was no abuse of discretion in denial of motion for new trial based on affidavits relating to alleged communications with jury during trial.

Error to Recorder's Court of Detroit; Boyne (John A.), J. Submitted October 15, 1931. (Docket No. 210, Calendar No. 35,713.) Decided December 8, 1931.

Jerry Mullane, Harry Hallisey, Roy Cornelius, and Louis Ross were convicted of kidnapping. Defendants Mullane, Hallisey, and Cornelius bring error. Affirmed.

*Louis W. McClear,* for appellant Mullane.

*George K. Williams,* for appellants Hallisey and Cornelius.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Edmund E. Shepherd,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendants, except Ross, seek review of their conviction and sentence on a charge of kidnapping one Charles Mattler. The errors will

be considered in the order discussed by defendants' counsel in their brief.

1. After arraignment, and before trial, counsel for Mullane moved for a separate trial for his client, for the reason that he "has a good and meritorious defense and believes that his said defense would be prejudiced if he is compelled to go to trial with the other defendants."

It is claimed that similar motions were made on behalf of the other defendants, but they do not appear in the files. No affidavit, stating facts on which the court might determine whether the defenses relied on were inconsistent with each other and a joint trial might result in prejudice to one or more of them, was presented. Under the provisions of our code of criminal procedure (3 Comp. Laws 1929, § 17298), the question of severance rests in the discretion of the court, and it was not abused in the denial of the motion.

2. The record discloses that after a panel of 14 jurors had been "finally accepted by counsel for all parties, upon inquiry by the court it then developed that juror No. 2 and juror No. 9 had recently served on a condemnation jury."

After a conference in the judge's chambers, he announced that he would "be liberal in any reasonable objection to any juror which will be taken as a challenge for cause," but would allow no more peremptory challenges. (It appears that the defendants had theretofore exhausted all such challenges.) Quoting from the record:

"(Thereupon, two jurors were called in lieu of the two excused, and after examination by all counsel, the jury as completed was accepted and sworn.)"

The examination of these jurors does not appear in the record, nor do counsel claim that they were not in every way qualified to sit.

The defendants had the right to a trial "by an impartial jury." Const., art. 2, § 19. They had the right to exercise challenges, either for cause or peremptory, at any time before the jury were sworn to try the case. It appears that two entire days were consumed in the selection of this jury. While no name should appear upon the panel except that of a person qualified to sit, it is a well-known fact that, especially in the large cities, such names will occasionally be placed thereon. Counsel engaged in the trial, either on behalf of the prosecution or defense, when permitted to examine the jury as they here were, may inquire of each juror as to his or her qualification to sit as such. Fourteen persons were impaneled at the time attention was called to the disqualification of the two jurors. The defense had exercised all of the peremptory challenges to which they were entitled. Instead of the court's excusing them of his own motion, the prosecuting attorney might very properly have challenged them for cause, and, had he done so, the challenges would have been sustained. In what way can it then be said that the defendants were deprived of the right of further peremptory challenge by the course pursued? If defendants' counsel chose to exercise all of their peremptory challenges before the jury were ordered to arise and be sworn, they took the chance that after they had done so it might be discovered that a person not qualified to sit was among the number in the jury box and that he or she might be removed therefrom by order of the court.

3. During the cross-examination of one of the people's witnesses, he was asked if the officers did not tell him that "they were going to send you back to Ohio on the Max Plummer case," whereupon the assistant prosecuting attorney objected, and, in stating his objection, said: "The question asked by

Mr. McClear has been asked for solely one purpose, to prejudice this witness in the eyes of the jury,'' to which counsel took objection. The court permitted the question to be answered, but did not caution the jury to disregard the statement made. In our opinion his omission to do so does not constitute reversible error. The remark had better been left unsaid, but jurors are presumed to be intelligent and to have an opinion themselves as to counsel's reason for asking a question.

4. The defendants did not take the stand, but several witnesses called by them testified that they were at another place when the offense was committed. The court in its charge, when referring to the testimony of Laman that the defendant Mullane was in one of the cars with him the night the offense was committed, said:

"That is a matter which you must determine. He has presented an *alibi* here. An *alibi* is, as I will define later, something that is easy to prove and very hard to disprove. If you find that *alibi* established or it raises a doubt, of course, that is a matter you must take into consideration."

He afterwards referred to this defense at length, defining it clearly, and concluded relative to it by saying:

"Members of the jury, an *alibi* is an effort to prove by testimony that the defendant was at some other place than that where the act occurred at the time of the taking place of that act. Therefore, you should scrutinize the testimony on that point very carefully. But if that defense, members of the jury, has raised in your minds a reasonable doubt, if after carefully scrutinizing all *alibis* and all of the other testimony in this case, if there is still a reasonable doubt as to the guilt of the defendant, of course you must acquit him."

We find no reversible error in the entire instruction relating to this subject.

5. A witness named Andrews testified that the defendant Cornelius told him the names of the several persons engaged in the kidnapping and stated who they were. On objection that such statement was not binding on the other defendants, the court so ruled, whereupon the assistant prosecutor said, "The declaration of a co-conspirator, your honor," to which the court responded, "That is true." No objection was taken to this remark of the court or prosecutor, and in our opinion no prejudice to either of the defendants resulted therefrom.

6. Errors are assigned upon the instructions to the jury and to the refusal to give certain requests. We have examined the charge with care, and are satisfied that the rights of the defendants were fully protected thereby and that the requests preferred, so far as applicable to the facts disclosed by the evidence, were fairly covered therein.

7. A motion for a new trial was made and denied. Certain affidavits were filed in support thereof. The attorney for the defendant Hallisey deposed that while the jury were deliberating he saw some of the officers assembled around a cold air register in a corridor and that they were "talking about the above-mentioned defendants;" that after the verdict had been rendered, he discovered that what was there said could have been heard in the jury room; that on one occasion, when the jury were at luncheon in the basement of the building in which the trial was had, two of the jurors sat at a separate table, and, while sitting there, "people in the basement came up to them and shook hands with them and talked with them;" that, on the attention of the officers in charge of the jury being called to it, they brought them to the table where the other jurors sat; that he talked

with one of the two extra jurors after he had been excused, and was told by him that the jurors had made up their minds and would quickly return a verdict of guilty.

Minnie Hair deposed that Mrs. Charles Boss, the wife of one of the jurors, told her that she had talked with her husband over the telephone while the case was pending.

Joseph Cluckey deposed that he saw one of the officers standing on an inverted cuspidor at the door leading into the jury room "with his ear to the crack," but did not know that he had any communication with the jury.

The statement that the officers in the corridor were talking about the defendants, even if heard by the jury, does not lead to an inference that anything disrespectful concerning them was said, nor does it appear that the cold air register in the jury room was not closed. If counsel were impressed that the defendants' rights were affected by what occurred in the lunch room during the trial, the attention of the court should have been called to it.

A motion for a new trial is an appeal to the sound discretion of the court. The right thereto is conferred by statute (3 Comp. Laws 1929, § 17355). In a criminal case it is based upon the claim that the defendant has not had that fair and impartial trial guaranteed to him by the Constitution, or that the verdict is against the great weight of the evidence. The evidence in this case strongly supports the verdict rendered, and we find no abuse of discretion on the part of the trial court in denying the motion.

The judgment is affirmed.

BUTZEL, C. J.; and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.